**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

Case No.: 15-cv-61144-RLR

ILISSA M. JONES and WENDY SHANKER, individually
and on behalf of a class of similarly situated persons,

      Plaintiffs,

v.

UNITED HEALTHCARE SERVICES, INC.,
UNITED HEALTHCARE, INC.,
NEIGHBORHOOD PARTNERSHIP, INC., and
UNITED HEALTHCARE LIFE INSURANCE CO.,

      Defendants.

_____/

**PLAINTIFFS' MOTION**
**FOR PRELIMINARY APPROVAL OF CLASS ACTION**
**<u>SETTLEMENT AND CERTIFICATION OF THE SETTLEMENT CLASS</u>**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.   INTRODUCTION ................................................................................4

II.  FACTUAL AND PROCEDURAL BACKGROUND ........8

    A.   The Action ..............................................................................8

    B.   The Settlement Terms and Agreement ...............................10

        1.   *The Proposed Settlement Class* ................................10

        2.   *The Relief and Settlement Consideration* ...............10

        3.   *Release of Claims* ....................................................11

        4.   *Settlement Notice and Opt-Out Right* .....................12

        5.   *Class Counsel Fees and Expenses and Representative Plaintiffs Case Contribution Award* ...............................................12

III. THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL ...............................................12

    A.   The Settlement is the product of good faith, informed, arm's-length negotiations among experienced counsel ...............14

    B.   The Settlement confirms the relief which the Settlement Class sought in this Action, and provides further, more expansive relief, demonstrating beyond question that the Settlement is within the range of reasonableness .....................................................................16

    C.   The Settlement will obviate litigation hurdles for the Class .......................17

    D.   Class Counsel submit that the Settlement is reasonable and in the Settlement Class Members' best interests ...............18

IV.  THE SETTLEMENT CLASS SHOULD BE PRELIMINARILY CERTIFIED ..........................................................................18

    A.   The Settlement Class is sufficiently numerous under Rule 23(a)(1) ...........19

    B.   Common questions of law and fact exist under Rule 23(a)(2) .....................19

    C.   Plaintiffs' claims are typical of the Settlement Class under Rule 23(a)(3) ................................................................20

    D.   Plaintiffs will fairly and adequately represent the interests of the Settlement Class under Rule 23(a)(4) ................................21

    E.   The Settlement Class satisfies Rule 23(b)(2) ................................22

V.   THE COURT SHOULD APPOINT CLASS COUNSEL ..........................24

VI.  PROPOSED SCHEDULE OF EVENTS ...............................24

VII  STAY OF RELATED ACTIONS ........................................25

VIII. CONCLUSION ................................................................25

Plaintiffs Ilissa M. Jones and Wendy Shanker, on behalf of themselves and the Settlement Class, and with the consent of Defendants United Healthcare Services, Inc., UnitedHealthcare, Inc., Neighborhood Partnership, Inc., and United Healthcare Life Insurance Co. (collectively the "United Defendants"), respectfully request entry of an order (1) granting preliminary approval of the class action settlement set forth in the Parties' Settlement Agreement and Release (the "Settlement" or "Agreement"), (2) certifying a class for settlement purposes, and (3) providing for issuance of notice to Settlement Class Members.[1]

## I.   <u>INTRODUCTION</u>

After more than a year of hard-fought litigation, during which United removed the Hepatitis C Drug coverage Fibrosis Restrictions[2] that were the reason why Plaintiffs filed this Action in the first place, Plaintiffs and United (collectively the "Parties") have negotiated a Settlement that follows on United's removal of the Fibrosis Restrictions and provides additional benefits. It provides not only for the permanent removal of the Fibrosis Restrictions, but also eliminates another bar to coverage in the form of an Abstinence Restriction by which United denied Hepatitis C Drug coverage to insureds who could not demonstrate that they had abstained from all alcohol or drug use for at least six (6) months prior to treatment.[3] Additionally, the

---

[1] The Settlement Agreement is attached as **Exhibit A**. Unless otherwise noted, all capitalized terms used here have the same definition as that provided in the Settlement Agreement. Due to time constraints, counsel for United and Plaintiffs will submit a fully-executed agreement on or before September 13, 2016.

[2] Under the Settlement Agreement, the term "Fibrosis Restrictions" means a requirement in a Clinical Pharmacy Program for a Hepatitis C Drug that an individual with hepatitis C demonstrate a specific level of hepatic fibrosis in order to obtain prior authorization for the Hepatitis C Drug. Plaintiffs filed the Action to force the removal of those restrictions.

[3] Under the Settlement Agreement, the term "Abstinence Restriction" means a requirement in a Clinical Pharmacy Program for a Hepatitis C Drug that an individual has no known history of illicit drug or alcohol abuse, or has abstained from the use of illicit drugs and alcohol abuse for a specific period of time (e.g., six months prior to treatment), or submit a negative urine drug collected within a specific period of time (e.g., 30 days prior to treatment) in order to obtain prior

Settlement provides for payments of up to $2,400 to certain Settlement Class Members who are no longer covered by United, and have no coverage for Hepatitis C Drugs.  In total, the Settlement applies to approximately 5,000 people suffering from hepatitis C and, given the substantial cost of Hepatitis C Drugs, provides access to expanded coverage that is extremely valuable to those individuals.[4] This is an excellent result that is in the best interests of the Settlement Class and, accordingly, should be preliminarily approved by the Court.

This case arises from the denial of coverage for Hepatitis C Drugs through the use of Clinical Pharmacy Programs that employed the Fibrosis Restrictions and the Abstinence Restriction. About seven months after Plaintiffs sued, United removed the Fibrosis Restrictions from its Clinical Pharmacy Programs and published revised Clinical Pharmacy Programs on one of its websites for its insureds to see. By this Settlement, United has agreed to provide expanded notice to the Settlement Class Members that United has removed the Fibrosis Restrictions, and also has agreed to remove from its Clinical Pharmacy Programs the Abstinence Restriction, as well as provide monetary relief to certain Settlement Class Members who are no longer covered by United, and have no coverage for Hepatitis C Drugs. This substantial and comprehensive

---

authorization for the Hepatitis C Drug. As part of this Settlement, United is dropping its Abstinence Restriction from its Clinical Pharmacy Programs for Hepatitis C Drugs.

[4] For example, the list price for Harvoni is $63,000 for an 8-week course of therapy and $94,500 for a 12-week course of therapy.  Anna Edney, *Gilead Wins U.S. Approval for Hepatitis C Combo Pill*, Bloomberg (Oct. 11, 2014 – 12:01 AM EDT), http://www.bloomberg.com/news/articles/2014-10-10/gilead-wins-u-s-approval-for-hepatitis-c-combo-pill (last visited Aug. 30, 2016).  The manufacturer of Harvoni estimated in 2015 that its gross-to-net adjustable off its list price for Harvoni would be 46%, with a range of discounts offered to public and private health care payers.  Jaimy Lee, *Hep C drug price war likely to slow Gilead's growth*, Modern Healthcare (February 6, 2015), http://www.modernhealthcare.com/article/20150206/news/302069962 (last visited Feb. 6, 2015). Because Harvoni still costs tens of thousands of dollars after discounting, coverage for the drug is extremely valuable to an individual with hepatitis C.

4

relief was the product of rigorous, arm's-length negotiations by the Parties and their counsel under mediator Paul C. Huck, Jr.

With this motion, Plaintiffs seek entry of an order providing for, among other things:

(1)    Preliminary approval of the Settlement;

(2)    Preliminary certification of a Settlement Class and appointment of Plaintiffs' counsel as Class Counsel;

(3)    Approval of the form of notice describing:

        a.    The Settlement, and Settlement Class Members' rights with respect to the Settlement;

        b.    The proposed Release of claims;

        c.    The proposed procedure for removing, and continuing not to use, the Abstinence and Fibrosis restrictions to deny coverage;

        d.    Class Counsel's request for attorneys' fees and expenses, as well as Case Contribution Awards for the representative Plaintiffs;

        e.    The procedure for opting out of or objecting to the Settlement; and

(4)    The scheduling of a hearing to consider the final approval of the Settlement (the "Final Approval Hearing").

At the Final Approval Hearing, the Court will have before it more expansive filings submitted in support of the proposed Settlement, and will be asked to make a determination as to whether the Settlement is fair, reasonable, and adequate under Rule 23 of the Federal Rules of Civil Procedure. At this time, however, Plaintiffs request only that the Court preliminarily approve the Settlement and the Settlement Class, so that notice may be provided. Thus, the Court is not required at this point to make a final determination regarding class certification or the reasonableness of the Settlement, and no Settlement Class Member's substantive rights will be prejudiced by preliminary approval.

For purposes of this motion, the primary issue before the Court is whether the proposed Settlement's terms are within the range of reasonableness, i.e., what ***might*** be approved as fair,

reasonable, and adequate, in order to justify notifying the Settlement Class and scheduling a final approval hearing. At this time, the Court need only find that the Settlement is "the result of the parties' good faith negotiations, there are no obvious deficiencies and the settlement falls within the range of reason." *In re Checking Account Overdraft Litig.*, 275 F.R.D. 654, 661 (S.D. Fla. 2011).

Plaintiffs and Class Counsel respectfully submit that the Settlement is fair, reasonable and adequate, and should receive the Court's preliminary approval. We are well positioned to make this recommendation after having actively litigated this case and others for more than a year. During that time, Class Counsel spent thousands of hours researching and investigating claims, allegations and defenses regarding United's denial of Hepatitis C Drug coverage, including reviewing thousands of pages of documents and relevant medical literature, and speaking with numerous Settlement Class Members and experts in the field. Our investigation gives us a thorough understanding of the strengths and weaknesses of this case, and allows us to readily evaluate the risks associated with it, as well as the fairness of the proposed Settlement, which was reached after months of intense arm's-length negotiations, involving two formal, in-person mediations, and many more informal negotiations.

With this thorough understanding, Plaintiffs and Class Counsel submit that the Settlement is a tremendous victory for Settlement Class Members, because it not only provides expanded notice of the relief that was the *raison d'etre* for this class action, namely, expanded coverage for a breakthrough treatment and potentially life-saving cure for hepatitis C, but it also provides the additional, valuable, benefit of removing the Abstinence Restriction from United's Clinical Pharmacy Programs. The benefits and value of that relief to Settlement Class Members must be analyzed in light of the risks of protracted and contested litigation—including appeals and

dispositive motion practice—which might result in no recovery, no expanded coverage for Hepatitis C Drug treatment, and no cure for Settlement Class Members' hepatitis C. Thus, we respectfully submit that the proposed Settlement is an outstanding result, is in the best interests of Settlement Class Members, and warrants preliminary approval.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   The Action

On May 29, 2015, Plaintiff Ilissa Jones, on behalf of herself and all similarly-situated persons, sued the United Defendants, alleging that they had breached their health insurance contracts by unlawfully denying coverage for Hepatitis C Drug treatment. Jones brought state-law contract claims seeking specific performance, declaratory and injunctive relief on behalf of people who (1) had non-ERISA health insurance plans, and (2) had been denied coverage for Hepatitis C Drug treatment based on the Fibrosis Restrictions.

On July 30, 2015, Jones amended her complaint to assert claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-1968. The RICO claims alleged that the United Defendants had engaged in a pattern of misleading and deceptive conduct through the use of pretextual, inherently fraudulent guidelines that purported to be based on medical evidence when, in fact, they were not. On October 23, 2015, Jones amended her complaint a second time to add Plaintiff Wendy Shanker and bring claims on behalf of people who (1) had ERISA-governed health insurance plans, and (2) had been denied Hepatitis C Drug treatment based on the Fibrosis Restrictions. The ERISA subclass sought relief under §§ 1132(a)(1)(B) and (a)(3) of ERISA, alleging that the United Defendants had violated ERISA by unlawfully denying coverage for Hepatitis C Drug treatment through the use of pretextual guidelines. United removed the Fibrosis Restrictions from its Clinical Pharmacy Programs on

January 1, 2016, and posted the revised Clinical Pharmacy Programs on one of its websites, but did not otherwise notify insureds of this change.

On February 10, 2016, the United Defendants moved to dismiss the Action in its entirety, arguing that its guideline change as to the Fibrosis Restrictions had mooted the case and that Plaintiffs failed to state a claim. While that motion was pending, the Parties exchanged initial disclosures, and Plaintiffs served a document and interrogatory request. In response, the United Defendants produced approximately 20,000 pages of documents and also moved to stay discovery, which the Court granted on March 9, 2016.

The Parties' first mediation occurred on March 1, 2016, with former Eleventh Circuit Judge Stanley F. Birch (Ret.) as mediator. The mediation was aimed at resolving the RICO, ERISA, and breach of contract claims. No settlement was reached after a full day of mediation, and litigation continued. On April 11, 2016, United filed an MDL petition to transfer and centralize two later-filed, duplicative actions in this Court.[5] On May 9, 2016, this Court ruled in a related action that another insurer's denial of coverage based on similar Fibrosis Restrictions did not constitute a breach of contract or RICO violation. *See Janie Kondell, et al. v. Blue Cross and Blue Shield of Florida, Inc.*, Case No. 15-cv-61118 at D.E. 103 (S.D. Fla. May 9, 2016) (hereinafter referred to as "*Kondell*").

Negotiations also continued, and the Parties agreed to attend a second mediation session on August 4, 2016. That mediation, under the direction of Paul C. Huck, Jr., lasted all day but did not resolve. Discussions continued through the auspices of the mediator the following day and, after intense, protracted, arm's-length negotiations, the Parties reached an agreement in principle to settle the Action, in exchange for United's removal of the Abstinence Restrictions

from its Clinical Pharmacy Programs for Hepatitis C Drugs, provision of notice to individuals regarding the change to its Clinical Pharmacy Programs, agreement not to use the Fibrosis Restrictions in Clinical Pharmacy Programs to deny Hepatitis C Drug coverage, and its provision of a mechanism to help provide insurance access to certain Settlement Class Members who are no longer covered by United, and are either uninsured, or have no coverage for Hepatitis C Drugs due to a Fibrosis or Abstinence Restriction.

**B.    The Settlement Terms and Agreement**

The settlement negotiations were hard fought.  But as set forth below, after substantial and sustained effort by the Parties, and with the assistance of experienced mediators, the Parties were able to reach a proposed Settlement.

**1.    The Proposed Settlement Class**

The proposed Settlement provides this relief to the Settlement Class, which includes all persons currently or formerly covered under any type of commercial health benefits plan, health insurance policy, or health maintenance organization contract with a medical benefit or prescription drug benefit (or both) insured or administered by United whose request for prior authorization or coverage of a Hepatitis C Drug was denied on or before August 4, 2016 based in whole or in part on a Fibrosis or Abstinence Restriction and who have not subsequently received a Hepatitis C Drug.

**2.    The Relief and Settlement Consideration**

Pursuant to the Settlement, United agrees to remove the Abstinence Restriction from its Clinical Pharmacy Programs for Hepatitis C Drugs and not use the Fibrosis Restrictions to deny coverage for Hepatitis C Drugs under United's Clinical Pharmacy Programs for Hepatitis C

---

[5] On August 5, 2016, after full briefing and a July 29th hearing, the MDL panel denied United's

Drugs. No later than five business days after the Effective Date, United will take the steps necessary to eliminate the current substance-abuse-abstinence requirement in Clinical Pharmacy Programs for Hepatitis C Drugs and replace it with a treatment-readiness assessment, which includes a provider assertion that the patient demonstrates treatment readiness, including the ability to adhere to the treatment regimen. Thus, for persons who were previously denied coverage (and for any person who seeks coverage in the future), United will not be permitted to deny coverage for Hepatitis C Drug treatment under the Clinical Pharmacy Programs based on that person's failure to demonstrate either (1) abstinence from drug or alcohol use, or (2) any particular level of fibrosis.

      In addition to this valuable settlement consideration, any Settlement Class Member who was formerly covered under any type of commercial health benefits plan, health insurance policy, or health maintenance organization contract with a medical or prescription drug benefit insured or administered by United will be given the opportunity to enroll in any individual plan (on-exchange or off-exchange) that United offers in the Settlement Class Member's state in 2017. United shall not be responsible for paying any Settlement Class member's premium for enrollment in a United individual plan. Other Settlement Class Members who are no longer covered by United—and are uninsured, or have no coverage for Hepatitis C Drugs due to a Fibrosis or Abstinence Restriction—may submit claims to United for payments of up to $2,400 per person.[6] The Settlement Class Members may use the payments to obtain coverage for Hepatitis C Drugs. United will pay on a claims-made basis up to a total of $500,000.00.

---

petition for transfer and centralization of the two later-filed, duplicative actions.

[6] The maximum payment amount approximates the annual national average premium for a bronze level health plan in 2015. Individual Shared Responsibility Provision—Reporting and Calculating the Payment, https://www.irs.gov/affordable-care-act/individuals-and-families/aca-individual-shared-responsibility-provision-calculating-the-payment.

### 3.      *Release of Claims*

In exchange for the Settlement Consideration, members of the Settlement Class will

release United and its respective past, present, and future officers, directors, shareholders,

stockholders, policyholders, members, principals, direct or indirect parents or their customers,

direct or indirect subsidiaries or their customers, direct or indirect affiliates or their customers,

divisions, partners, insurers, reinsurers, employees, servants, agents, representatives,

administrators, executors, beneficiaries, heirs, trustees, fiduciaries, attorneys, accountants,

auditors, advisors, predecessors-in-interest, successors-in-interest, and assigns, from any and all

past, present, or future claims, actions, demands, lawsuits, rights, liabilities, damages, losses,

indebtedness, obligations, attorney's fees, interest, expenses, costs, and causes of action, arising

from or in any way related to the Action, Hepatitis C Drugs, hepatitis C virus ("HCV") or any

health or economic condition or circumstance caused by or in any way related to the Hepatitis C

Drugs or HCV.

### 4.      *Settlement Notice and Opt-Out Right*

Notice of the Settlement will be provided in the form of the Settlement Notice attached as

**Exhibit B** hereto (and to the Settlement Agreement), assuming the form is approved by the

Court. The Settlement Notice will be mailed to all Settlement Class members currently or

formerly enrolled in a commercial health benefits plan, health insurance policy, or health

maintenance organization contract insured or administered by United. The Settlement

Administrator will mail the Settlement Notice by the Notice Deadline. The Settlement Notice

will direct recipients to the Settlement Website and provide a toll-free number for obtaining

additional information concerning the Settlement. The Settlement Notice will be posted on the

11

Settlement Website. United will post links to the Settlement Website on its member portals that it maintains in the ordinary course of its business for the benefit of Settlement Class Members.

Any Settlement Class Members who wish to object to the Settlement may do so by sending their objections to the Court and the Parties at the addresses designated in the Settlement Notice. Any Settlement Class Members who wish to preserve individualized claims may opt out of the Settlement by sending a written request to the Settlement Administrator at the address designated in the Settlement Notice. The Settlement Administrator will communicate any opt-out requests to United and Class Counsel, who will in turn report them to the Court as part of the Final Approval Hearing. United shall bear all notice costs, including the hiring of a Settlement Administrator, and providing class notice.

### 5. *Class Counsel Fees and Expenses and Representative Plaintiffs Case Contribution Award*

United has agreed to pay, and to not object to a motion by Class Counsel for an award of attorneys' fees and expenses in the amount of $2,750,000. United also will not oppose an application for a case contribution award not to exceed $5,000 to each representative Plaintiff, which will be deducted from the amount made available to pay the attorneys' fee award. The Court will consider whether to grant or deny these awards separate and apart from its consideration of the fairness, reasonableness, and adequacy of the Settlement.

## III. THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL

Rule 23(e) of the Federal Rules of Civil Procedure provides that before a class action may be dismissed or compromised, notice must be given in the manner directed by the court, and judicial approval must be obtained. Fed. R. Civ. P. 23(e). As a matter of public policy, courts favor settlements of class actions for their earlier resolution of complex claims and issues, which promotes the efficient use of judicial and private resources. As one court put it:

> Settlement 'has special importance in class actions with their notable uncertainty, difficulties of proof, and length. Settlements of complex cases contribute greatly to the efficient utilization of scarce judicial resources, and achieve the speedy resolution of justice . . . .'

*Turner v. Gen. Elec. Co.*, 2006 WL 2620275, at *2 (M.D. Fla. 2006) (quoting *Behrens v. Wometco Enters., Inc.,* 118 F.R.D. 534, 538 (S.D. Fla. 1988), *aff'd,* 899 F.2d 21 (11th Cir.1990) (citations omitted)); *accord In re U.S. Oil and Gas Litig.,* 967 F.2d 489, 493 (11th Cir. 1992) ("Public policy strongly favors the pretrial settlement of class action lawsuits.").

As noted above, approval of a class action settlement is a two-step process. *Fresco v. Auto Data Direct, Inc.*, 2007 WL 2330895, at *4 (S.D. Fla. 2007).  Preliminary approval is the first step, requiring the Court to "make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms." *Id.* (citations omitted).  In the second step, after notice to Settlement Class Members and time and opportunity for them to object or otherwise be heard, the Court considers whether to grant final approval of the settlement as fair and reasonable under Rule 23. *Id.*

The standard for granting preliminary approval is low—a proposed settlement will be preliminarily approved if it falls "within the range of possible approval" or, otherwise stated, if there is "probable cause" to notify the class of the proposed settlement and "to hold a full-scale hearing on its fairness[.]" *In re Mid-Atl. Toyota Antitrust Litig.*, 564 F. Supp. 1379, 1384 (D. Md. 1983) (quoting Manual for Complex Litigation § 1.46 at 62, 64-65 (1982)); *see also* Newberg on Class Actions § 13:13 (5th ed. 2016) ("Bearing in mind that the primary goal at the preliminary review stage is to ascertain whether notice of the proposed settlement should be sent to the class, courts sometimes define the preliminary approval standard as determining whether there is 'probable cause' to submit the [settlement] to class members and [to] hold a full-scale hearing as to its fairness."). Thus, "[p]reliminary approval is appropriate where the

13

proposed settlement is the result of the parties' good faith negotiations, there are not obvious deficiencies, and the settlement falls within the range of reason." *In re Checking Account Overdraft Litig.*, 275 F.R.D. at 662.

Class Counsel respectfully request that the Court take the first step in the process and grant preliminary approval of the Settlement. The Settlement is clearly within the range of reasonableness, and satisfies all standards for preliminary approval.

**A.     The Settlement is the product of good faith, informed, arm's-length negotiations among experienced counsel**

The Court need only decide at this stage whether the proposed Settlement appears to be the result of informed, good-faith, arm's-length negotiation between the Parties and their capable and experienced counsel and not the result of collusion. This analysis begins with a presumption of good faith in the negotiation process. *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir. 1992) ("Absent evidence of fraud or collusion, such settlements are not to be trifled with."). In fact, "[s]ettlement negotiations that involve arm's length, informed bargaining with the aid of experienced counsel support a preliminary finding of fairness." *In re Checking Account Overdraft Litig.*, 275 F.R.D. at 661; *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 576 (S.D.N.Y. 2008) ("[A] strong presumption of fairness attaches to a class action settlement reached in arm's-length negotiations among able counsel."); *Padro v. Astrue*, 2013 WL 5719076, at *3 (E.D.N.Y. 2013) ("Where the integrity of the negotiation process is preserved, a strong initial presumption of fairness attaches to the proposed settlement.").

Here, the Settlement was the product of significant give and take by the Parties in vigorous, intense, arm's length negotiations. The Parties participated in two formal, in-person mediation sessions, as well as numerous conferences among counsel and two mediators, the Hon. Stanley F. Birch (Ret.), and Paul C. Huck, Jr., who both have significant experience in

successfully mediating complex actions. Their involvement also weighs in favor of preliminary approval. *In re WorldCom, Inc. ERISA Litig.*, 2004 WL 2338151, at *6 (S.D.N.Y. 2004) (finding settlement reasonable where "[a] respected and dedicated judicial officer presided over the lengthy discussions from which this settlement emerged").

The Parties' extensive negotiations also were facilitated by the sharing of information through a formal and informal discovery process. From that information, as well as Class Counsel's extensive investigation, the Parties provided the mediators with comprehensive mediation statements addressing the strengths and weaknesses of the claims and defenses asserted in the Action. Over the course of five months (from March to August) the Parties and the mediators spent considerable time explaining their positions and views on all issues. Throughout this time, the Parties continued to engage in significant motion practice, including motions to dismiss, motions to stay, for reconsideration, and to transfer and centralize related actions in this Court. These additional factors helped to inform the Parties as to the strengths and weaknesses of the case so as to produce a fair and reasonable settlement.

The extensive arm's-length nature of the settlement negotiations and the involvement of an able and experienced mediator in reaching the proposed Settlement support the conclusion that the Settlement is presumptively fair, reasonable, and adequate, and that it was achieved free of collusion. *In re Checking Account Overdraft Litig.*, 275 F.R.D. at 661; *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (a mediator's involvement in settlement negotiations "helps to ensure that the proceedings were free of collusion and undue pressure").

**B.    The Settlement confirms the relief which the Settlement Class sought in this Action, and provides further, more expansive relief, demonstrating beyond question that the Settlement is within the range of reasonableness.**

United's denial of Hepatitis C Drug coverage to Plaintiffs and Class Members through the use of the Fibrosis Restrictions is what caused Plaintiffs to file the Action. The Settlement

confirms that United shall not use those restrictions in its Clinical Pharmacy Programs. Moreover, the Settlement provides further, more expansive relief—(1) the removal of the Abstinence Restriction from United's Clinical Pharmacy Programs for Hepatitis C Drugs, (2) notice to individuals regarding the change to the Clinical Pharmacy Programs, and (3) the provision of a mechanism to help provide insurance access to certain Settlement Class Members who are no longer covered by United, and are either uninsured, or have no coverage for Hepatitis C Drugs due to a Fibrosis or Abstinence Restriction. Thousands of Settlement Class Members may obtain access to coverage for Hepatitis C Drugs—which are worth tens of thousands of dollars to each Settlement Class Member—as a consequence of the Settlement.

Plaintiffs and the Settlement Class faced significant hurdles in obtaining this relief, made apparent by the Court's order of dismissal in *Kondell*, which arguably would have applied to this Action, greatly increasing the risk that Settlement Class Members would obtain no relief of any sort. Other hurdles included potentially unfavorable rulings regarding the ERISA claims and class certification. "[T]he more complex, expensive, and time consuming the future litigation, the more beneficial the settlement becomes as a matter of efficiency to the parties and the Court." *In re Citigroup Inc. Bond Litig.*, 296 F.R.D. 147, 155 (S.D.N.Y. 2013).

At bottom, continued litigation would have required the Parties and the Court to expend substantial resources litigating complex issues of law and fact, would have significantly delayed the Settlement Class Members' receiving any relief (even if Plaintiffs were to prevail), and would have presented the wholly unacceptable (and very real) risk that at the end of the day, Settlement Class Members would not obtain coverage for breakthrough treatments to cure their debilitating, degenerative, potentially fatal, and formerly incurable disease. Because of the

Settlement, the Settlement Class will gain access to expanded coverage. The relief provided by this Settlement unquestionably falls within the range of reasonableness.

### C.     The Settlement will obviate litigation hurdles for the Class

Any evaluation of the benefits of settlement must be tempered by the recognition that any compromise involves concessions by all settling parties. Indeed, "the very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes." *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 624 (9th Cir. 1982) (quoting *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977)).

As noted above, Plaintiffs and the Settlement Class faced significant hurdles, including persuading this Court that the *Kondell* dismissal order should not be applied to this Action. Uncertainty abounded for all Parties with respect to the ERISA claims, where Plaintiffs and the Settlement Class faced a motion to dismiss. Assuming Plaintiffs could have prevailed in persuading the Court they were right, they would have faced the additional hurdle of a vigorously opposed class certification motion. In short, continued litigation would have resulted in time-consuming discovery, briefing, expert testimony, and evidentiary hearings, which would have delayed access to Hepatitis C Drug coverage for Settlement Class Members. The Settlement obviates all these hurdles, eliminates significant litigation risks, and immediately expands Hepatitis C Drug coverage for Plaintiffs and Settlement Class Members.

### D.     Class Counsel submit that the Settlement is reasonable and in the Settlement Class Members' best interests

Lastly, the belief of experienced counsel that a negotiated settlement is in the best interests of the class carries significant weight. *In re Gen. Instrument Sec. Litig.,* 209 F. Supp. 2d 423, 431 (E.D. Pa. 2001) ("Significant weight should be attributed to the belief of experienced counsel that the settlement is in the best interests of the class."). Class Counsel have significant

experience in litigating numerous class actions, in state and federal court. That experience tells us that this Settlement is an excellent result for the Class.

## IV.   THE SETTLEMENT CLASS SHOULD BE PRELIMINARILY CERTIFIED

In connection with granting preliminary approval of the Settlement, the Court should preliminary certify a Settlement Class (the "Settlement Class" or "Class"), comprised of all persons currently or formerly covered under any type of commercial health benefits plan, health insurance policy, or health maintenance organization contract, with a medical benefit or prescription drug benefit (or both) insured or administered by United whose request for prior authorization or coverage of a Hepatitis C Drug was denied on or before August 4, 2016 based in whole or in part on a Fibrosis or Abstinence Restriction and who have not subsequently received a Hepatitis C Drug.

It is well established that "[a] class may be certified solely for purposes of settlement [if] a settlement is reached before a litigated determination of the class certification issue." *In re Checking Account Overdraft Litig.*, 275 F.R.D. at 659. In deciding whether to provisionally certify the Settlement Class, the Court must consider the same factors that it would consider in connection with a proposed litigation class—"*i.e.,* all Rule 23(a) factors and at least one subsection of Rule 23(b) must be satisfied—except that the Court need not consider the manageability of a potential trial, since the settlement, if approved, would obviate the need for a trial." *Id*. The Settlement Class here meets all of the requirements of Rule 23(a), as well as the requirements of 23(b)(2).

### A.   The Settlement Class is sufficiently numerous under Rule 23(a)(1)

"There is no rigid standard for determining numerosity[,]" however, "[t]he Eleventh Circuit has held that "[g]enerally, less than twenty-one is inadequate, more than forty adequate."

18

*Sanchez-Knutson v. Ford Motor Co.*, 310 F.R.D. 529, 536 (S.D. Fla. 2015) (citing *Cheney v. Cyberguard Corp.*, 213 F.R.D. 484, 490 (S.D. Fla. 2003)). Here, the numerosity requirement is easily met. According to United, there are approximately 5,000 Settlement Class Members. This far exceeds the Eleventh Circuit's baseline of "more than forty." *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986) (quoting 3B Moore's Federal Practice §23.05 (1) n.7 (1978)).

    **B.**    **Common questions of law and fact exist under Rule 23(a)(2)**

    Commonality requires that "a class action [] involve issues that are susceptible to class-wide proof." *Moreno-Espinosa*, 247 F.R.D. at 688 (citing *Murray v. Auslander*, 244 F.3d 807, 811 (11th Cir. 2001)). This requires no more than "one issue affecting all or a significant number of proposed class members." *Cheney*, 213 F.R.D. at 490 (S.D. Fla. 2003) (citing *Stewart v. Winter*, 669 F.2d 328 (5th Cir.1982)); *Kreuzfeld v. Carnehammar*, 138 F.R.D. 594, 599 (S.D. Fla. 1991)). Therefore, "[t]he threshold for commonality is not high[,]" and even "factual differences between class members do not preclude a finding of commonality, as long as common questions of law exist." *Id.* (citing *Forbush v. J.C. Penney Co., Inc.*, 994 F.2d 1101, 1106 (5th Cir.1993); *Tapken v. Brown*, 1992 WL 178984, at *27 (S.D. Fla. 1992); *Muzuco v. Re$ubmitIt, LLC*, 297 F.R.D. 504, 515 ("The Eleventh Circuit has noted that the Rule 23(a)(2) commonality requirement is a 'low hurdle[,]'" and "for purposes of Rule 23(a)(2) '[e]ven a single [common] question' will do.") (citing *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1356 (11th Cir. 2009)).

    Although only one question of law *or* fact is required to establish commonality, several common questions capable of class-wide resolution—or questions that would "generate common answers"—arise from Plaintiffs' allegations, including:

(a)   Whether United is denying coverage for Hepatitis C Drug regardless of whether or not Hepatitis C Drug treatment is medically necessary;

(b)   Whether United's denial of coverage breaches non-ERISA governed health insurance policies;

(c)   Whether United's denial of coverage violates ERISA;

(d)   Whether United's denial of coverage is misleading and deceptive; and

(e)   Whether United is liable to Plaintiffs and Settlement Class Members for specific performance, equitable and injunctive relief, and damages.

These common questions are capable of class-wide resolution for purposes of a settlement class.

**C.      Plaintiffs' claims are typical of the Settlement Class under Rule 23(a)(3)**

Typicality requires that "[a] class representative [] possess the same interest and suffer the same injury as the class members . . . ." *Moreno-Espinosa*, 247 F.R.D. at 689 (citing Fed. R. Civ. P. 23(a)(3)). In other words, there must be "a sufficient nexus exists between the claims of the named representatives and those of the class at large." *Id.* (citing *Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1279 (11th Cir. 2000)).

Plaintiffs' claims arise from the same alleged course of conduct and are based on the same legal theories as those brought on behalf of the Class. Plaintiffs allege that they and each Settlement Class Member were wrongfully denied Hepatitis C Drug treatment because they had not yet suffered and could not demonstrate advanced liver fibrosis. Therefore, Plaintiffs and every Settlement Class Member possess identical claims for denial of plan coverage or benefits, and for breach of contract (as to individual plans) or breach of fiduciary duty (as to ERISA-governed plans).

**D.      Plaintiffs will fairly and adequately represent the interests of the Settlement Class under Rule 23(a)(4)**

Adequacy requires a showing that the 'representative parties will fairly and adequately protect the interests of the class.'" *Sanchez-Knutson*, 310 F.R.D. at 540 (quoting Fed. R. Civ. P. 23(a)(4)). "A plaintiff may not validly claim representative status if his interest is antagonistic to those of the members of the class, and that conflict is a fundamental one, going to the specific issues in controversy." *Moreno-Espinosa*, 247 F.R.D. at 690 (citing *Pickett v. Iowa Beef Processors*, 209 F.3d 1276, 1280 (11th Cir. 2000). "As to the adequacy of counsel for the class representative, "[a]bsent specific proof to the contrary, the adequacy of class counsel is presumed." *Sanchez-Knutson*, 310 F.R.D. at 540 (citing *In re Seitel, Inc. Securities*, 245 F.R.D. 263, 271 (S.D. Tex. 2007)).

Here, there is not (and could not be) any conflict among the representative Plaintiffs and any other Settlement Class Members, because all "will similarly benefit if the prospective class is successful." *Moreno-Espinosa*, 247 F.R.D. at 690. If the Settlement is approved and the Settlement Class certified, Plaintiffs and all Settlement Class Members will receive expanded coverage for Hepatitis C Drug treatment to cure their formerly incurable disease. Further, Plaintiffs' counsel unquestionably are adequate Class Counsel. Andres Rivero, Alan H. Rolnick, Jorge A. Mestre, and Charles E. Whorton together possess more than 85 years of experience litigating class actions and complex commercial matters. Moreover, as the Court is aware, Plaintiffs' undersigned counsel are Class Counsel in a related action pending before this Court, which they have vigorously prosecuted. In that action, this Court already found the undersigned adequate to represent a similar settlement class in a similar settlement. *See Oakes, et al. v. Blue Cross and Blue Shield of Florida, Inc.*, Case No. 16-cv-80028 at D.E. 54 (S.D. Fla. June 21, 2016).

### E.     The Settlement Class satisfies Rule 23(b)(2)

In addition to satisfying the four requirements of 23(a), plaintiffs seeking class

certification also must satisfy one of the subsections of Rule 23(b). Plaintiffs here seek

certification under Rule 23(b)(2) with an opt out right, which the Court has discretion to provide

under Rule 23(d)(2).

### 1.     Rule 23(b)(2)

Certification under Rule 23(b)(2) is appropriate when "the party opposing the class has

acted or refused to act on grounds generally applicable to the class, thereby making appropriate

final injunctive relief or corresponding declaratory relief with respect to the class as a whole."

Fed. R. Civ. P. 23(b)(2). "Rule 23(b)(2) focuses on class actions where 'broad, class-wide

injunctive or declaratory relief is necessary." *Gordon v. Chase Home Fin., LLC*, 2013 WL

436445, at *6 (M.D. Fla. 2013). Under Rule 23(b)(2), "what matters is that a pattern of alleged

violations can be remedied for all putative class members by the same form of injunctive relief."

*Unknown Parties v. Johnson*, 2016 WL 267009, at *9 (D. Ariz. 2016). Here, injunctive and

declaratory relief can remedy United's alleged uniform breaches of ERISA-governed health

plans and non-ERISA governed health plans. The removal of the Fibrosis and Abstinence

Restrictions from United's Clinical Pharmacy Programs for Hepatitis C Drugs, through

injunctive and declaratory relief is precisely the relief provided by the Settlement. Thus, class

certification is proper under Rule 23(b)(2).

Rule 23(b)(2) certification does not require providing notice to the class or the right to

opt out, on the theory that where class-wide injunctive or declaratory relief is warranted, all class

members should receive it. That said, courts and parties recognize the importance of providing

notice, even when the relief provided is predominantly injunctive and declaratory in nature, and

often also provide an opt-out right to preserve any damages claims.  Accordingly, the Settlement also provides Class Members with notice and the right to opt out. Courts may (and frequently do) certify Rule 23(b)(2) injunctive classes with opt-out rights, as is sought here.

"A district court . . . acting under its Rule 23(d)(2) discretionary power may require that an opt-out right and notice thereof be given should it believe that such a right is desirable to protect the interests of the absent class members." *Penson v. Terminal Transp. Co.*, 634 F.2d 989, 994 (5th Cir. 1981). Rule 23(b)(2) opt-out classes are "designed to permit the class members to seek monetary relief in individual actions if they so choose rather than be limited to the injunctive relief sought in the class action." *Id.* (Rule 23(b)(2) classes with opt-out rights have been "implicitly approved by this Court"); *Holmes v. Cont'l Can Co.*, 706 F.2d 1144, 1154 (11th Cir. 1983) ("Parties to a proposed class action settlement may themselves provide for an opt out procedure by which class members may exclude themselves from the class and litigate their claims in the same action or in a separate lawsuit."); *In re Monumental Life Ins. Co.*, 365 F.3d 408, 417 (5th Cir. 2004) ("A district court is empowered by rule 23(d)(2) to provide notice and opt-out for any class action, so rule 23(b)(2) certification should not be denied on the mistaken assumption that a rule 23(b)(3) class is the only means by which to protect class members.").

Accordingly, Plaintiffs request that the Court certify the Class under Rule 23(b)(2) and allow for an opt-out right in the manner described in the proposed Settlement.

## V.       THE COURT SHOULD APPOINT CLASS COUNSEL

The Parties have agreed that Plaintiffs' counsel should serve as Class Counsel. As noted above, undersigned counsel have significant experience in litigating class actions and complex

cases. Because undersigned counsel are both qualified and determined to serve and represent the best interests of the Class, the Court should appoint them Class Counsel going forward.

## VI.     PROPOSED SCHEDULE OF EVENTS

In connection with preliminary approval of the Settlement, the Court must set a date and time for the Final Approval Hearing. Other deadlines in the settlement approval process, including the deadlines for requesting exclusion from the Settlement Class or objecting to the Settlement, will be determined based on the date of the Final Approval Hearing or the date on which the Preliminary Approval Order is entered. Class Counsel propose the following schedule:

| Event | Date |
|---|---|
| Deadline for mailing the Notice to Settlement Class Members ("Notice Deadline") | 15 days after the Court signs and enters the Preliminary Approval Order |
| Deadline for opting out of Settlement and submission of objections | 30 days after Notice Deadline |
| Deadline for filing papers in support of final approval of the Settlement and Class Counsel's application for an award of attorneys' fees and expenses | 35 days after Notice Deadline |
| Deadline to respond to any objections | 5 days prior to Final Approval Hearing |
| The Final Approval Hearing | Approximately 90 days from Notice Deadline, at the Court's convenience |

This schedule is similar to those used and approved by numerous courts in contemporary class action settlements. It will ensure due process to Settlement Class Members regarding their rights under the Settlement. *See Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1374-75 (9th Cir. 1993).

24

## VII.   <u>STAY OF RELATED ACTIONS</u>

The Parties also request as part of the preliminary approval order that the Court enter a stay of all related actions pending final determination of whether the Settlement should be approved. As part of this stay, no member of the Settlement Class may either directly or indirectly commence, prosecute, intervene in, or participate in any action, arbitration, or proceeding in any court, arbitration forum, or tribunal asserting any of the Released Claims against any of the Released Parties. This Court has the authority to stay related actions pursuant to Rule 23(d) in order to ensure the enforceability of the order preliminary approving the proposed settlement, as well as pursuant to the first-filed rule. *See Manuel v. Convergys Corp.,* 430 F.3d 1132, 1135-36 (11th Cir.2005) ("[W]here two actions involving overlapping issues and parties are pending in two federal courts, there is a strong presumption across the federal circuits that favors the forum of the first-filed under the first-filed rule."); *In re Checking Account Overdraft Litig.*, 859 F. Supp. 2d 1313, 1324 (S.D. Fla. 2012) (same); *Kaufman v. Am. Exp. Travel Related Servs. Co.*, 264 F.R.D. 438, 450 (N.D. Ill. 2009) ("District courts often issue injunctions against related state proceedings when a settlement has been at least preliminarily approved.").

## VIII.   <u>CONCLUSION</u>

Plaintiffs respectfully request that the Court grant this unopposed motion for preliminary approval and enter the attached proposed order preliminary approving the Settlement, preliminarily certifying the Settlement Class for settlement purposes, directing that the Notice and Release be sent to Settlement Class Members, appointing Class Counsel, and setting a hearing date for final approval.

Respectfully submitted on September 9, 2016.

RIVERO MESTRE LLP
*Class Counsel*
2525 Ponce de Leon Blvd., Suite 1000
Miami, Florida 33134
Telephone:  (305) 445-2500
Facsimile:  (305) 445-2505
E-mail: arivero@riveromestre.com
E-mail: arolnick@riveromestre.com
E-mail: cwhorton@riveromestre.com

By:      /s/ Andrés Rivero
ANDRÉS RIVERO
Florida Bar No. 613819
ALAN H. ROLNICK
Florida Bar No. 715085
JORGE A. MESTRE
Florida Bar No. 088145
CHARLES E. WHORTON
Florida Bar No. 46894

## **CERTIFICATE OF SERVICE**

I certify that on September 9, 2016, I electronically served all counsel of record via e-mail.

s/ Andrés Rivero
ANDRÉS RIVERO