**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

Case No.: 15-cv-61144-RLR

ILISSA M. JONES and WENDY SHANKER,
individually and on behalf of a class of similarly
situated persons,

               Plaintiffs,

     v.

UNITED HEALTHCARE SERVICES, INC.,
UNITED HEALTHCARE, INC.,
NEIGHBORHOOD PARTNERSHIP, INC., and
UNITED HEALTHCARE LIFE INSURANCE CO.,

              Defendants.

**AMENDED BRIEF OF *AMICI CURIAE* FOURTEEN STATE ATTORNEYS GENERAL
OPPOSING FINAL APPROVAL OF PROPOSED SETTLEMENT[1]**

**INTRODUCTION**

     The Attorneys General of Alabama, Arizona, Arkansas, Idaho, Kansas, Louisiana,

Mississippi, Nevada, North Dakota, Oklahoma, Pennsylvania, South Carolina, Texas, and

Wyoming (hereinafter, "the Attorneys General") hereby submit this brief to respectfully urge the

Court to reject the Proposed Settlement now pending and deny the related motions.[2] The Attorneys

General, having been notified of this settlement pursuant to the provision of the Class Action

Fairness Act of 2005, 28 U.S.C. § 1711 *et seq.* ("CAFA"), and having reviewed the September 9

---

[1] The only changes made in this amended brief are the addition of the state of Idaho as a signatory and the correction of a minor typographical error in the signature block pages.

[2] The Attorneys General, submit this brief only as *amici curiae*; the Attorneys General are not submitting to this Court's jurisdiction (as parties or otherwise), and this submission is being made without prejudice to any State's ability to enforce its consumer protection laws or otherwise investigate claims related to the issues here in dispute.

1

Motion for Preliminary Approval of Class Action Settlement and Certification of the Settlement Class, Dkt. 107, and the September 22 Preliminary Approval Order, Dkt. 110, make this submission to present their unique perspective on how the Proposed Settlement fails to properly serve the interests of the unnamed class members.[3]

Put simply, the Proposed Settlement is not fair, reasonable, or adequate under traditional Rule 23(e) analysis and pertinent federal precedent. Only the Defendant, class counsel, and the named plaintiffs receive particularized value from the deal. Indeed, if all absent class members were to opt out of the settlement they would retain their potential claims (including for damages); almost all would benefit just as equally from the relief in the Proposed Settlement; and there would be no change in the implementation of the Proposed Settlement's injunctive provisions.

"[T]he Rule 23(e) inquiry protects unnamed class members from unjust or unfair settlements agreed to by fainthearted or self-interested class representatives." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 594 (1997). And "[i]n approving a proposed class action settlement, the district court has a fiduciary responsibility to ensure that 'the settlement is fair and not a product of collusion.'" *Grant v. Bethlehem Steel Corp.*, 823 F.2d 20, 22 (2d Cir. 1987); *see also Silber v. Mabon*, 957 F.2d 697, 701 (9th Cir. 1992); *Reynolds v. Beneficial Nat. Bank*, 288 F.3d 277, 279-280 (7th Cir. 2002); *In re Cendant Corp. Litig.*, 264 F.3d 201, 231 (3d. Cir. 2001).

The duties owed to the absent class members compel rejection of the Proposed Settlement and related motions in light of the settlement's imbalance and its failure to specifically benefit the absent class members.

---

[3] Counsel for all parties have assented to the Attorneys General making this submission.

## INTEREST OF UNDERSIGNED STATE ATTORNEYS GENERAL

The Attorneys General are their respective States' chief law enforcement or chief legal officers.  Their interest here arises from two responsibilities.  *First*, the Attorneys General have an overarching responsibility to protect their states' citizens in their roles as chief law enforcement or chief legal officers.  *Second*, the undersigned have a responsibility to protect consumer class members under CAFA, which envisions a role for Attorneys General in the approval process of proposed class action settlements.  *See* 28 U.S.C. § 1715; *see also* S. REP. 109-14, 2005 U.S.C.C.A.N. 3, 5 (requirement "that notice of class action settlements be sent to appropriate state and federal officials," exists "so that they may voice concerns if they believe that the class action settlement is not in the best interest of their citizens."); *id.* at 35 ("notifying appropriate state and federal officials ... will provide a check against inequitable settlements"; "Notice will also deter collusion between class counsel and defendants to craft settlements that do not benefit the injured parties."); *Figueroa v. Sharper Image Corp.*, 517 F. Supp. 2d 1292, 1301 n.9 (S.D. Fla. 2007) (noting role of Attorneys General in class settlement approval process).

The undersigned Attorneys General make this submission to further these interests, speaking on behalf of citizen consumers who will be harmed if the Proposed Settlement and related motions are approved by the Court.

## ARGUMENT

## I.    THE COURT SHOULD REJECT THE SETTLEMENT TO PROTECT ABSENT CLASS MEMBERS

"Courts have long recognized that 'settlement class actions present unique due process concerns for absent class members.'"  *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011); *see also Taylor v. Sturgell*, 553 U.S. 880, 901 (2008) (Rule 23 protections are "grounded in due process").  Indeed, while "[c]lass counsel are duty bound to represent the best

interests of class members," "the interests of class members and class counsel nearly always diverge[.]" *In re HP Inkjet Printer Litig.*, 716 F.3d 1173, 1178 (9th Cir. 2013); *see also Evans v. Jeff D.,* 475 U.S. 717, 733 (1986) (recognizing that "the possibility of a tradeoff between merits relief and attorneys' fees" is often implicit in class action settlement negotiations). Class counsel has an incentive to obtain the maximum possible fee award, but that fee almost invariably comes directly out of the class members' pockets. Ultimately, "[a]lthough under the terms of each settlement agreement[] attorney[s'] fees technically derive from the defendant rather than out of the class' recovery, in essence the entire settlement amount comes from the same source." *Johnston v. Comerica Mortg. Corp.*, 83 F.3d 241, 246 (8th Cir. 1996).

And defendants are no help in policing these deals or counterbalancing the conflict between class counsel and the class. "[A] defendant who has settled a class action lawsuit is ultimately indifferent to how a single lump-sum payment is apportioned between the plaintiff's attorney and the class." William D. Henderson, *Clear Sailing Agreements: A Special Form of Collusion in Class Action Settlements*, 77 Tul. L. Rev. 813, 820 (2003). To a defendant, the fee award and the class award "represent a package deal," *Johnston*, 83 F.3d at 246, with the defendant ultimately "interested only in the bottom line: how much the settlement will cost him,'" *In re Southwest Airlines Voucher Litig.*, 799 F.3d 701, 712 (7th Cir. 2015); *see also In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 819–20 (3d Cir. 1995) ("'a defendant is interested only in disposing of the total claim asserted against it; ... the allocation between the class payment and the attorneys' fees is of little or no interest to the defense.'").

Therefore, given the conflicting economic considerations inherent in the settlement process, courts play an important role in weighing the reasonableness of proposed settlements, stepping in to police the "inherent tensions among class representation, defendant's interests in minimizing the cost of the total settlement package, and class counsel's interest in fees." *Staton*

*v. Boeing Co.*, 327 F.3d 938, 972 n.22 (9th Cir. 2003).  In carrying out this role, courts must not just search for signs of explicit collusion, "but also for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *In re Bluetooth Headset Prods.*, 654 F.3d at 947; *see also Braynen v. Nationstar Mortg., LLC*, No. 14-CV-20726, 2015 WL 6872519, at *10 (S.D. Fla. Nov. 9, 2015) (same).  It "is essential" that courts apply "careful scrutiny" throughout this review process, because to do otherwise and solely "rel[y] on counsel's opinion" would improperly "foster[] rubber stamping by the court[s]" and defeat the intent of judicial review of class action settlements.  *Holmes v. Cont'l Can Co.*, 706 F.2d 1144, 1150 (11th Cir. 1983); *see also Shane Grp., Inc. v. Blue Cross Blue Shield of Michigan*, 825 F.3d 299, 309 (6th Cir. 2016) (noting that district courts "must carefully scrutinize" settlements).

### A.    The Settlement Does Not Uniquely Benefit Absent Class Members

The core purpose of a class-action settlement is to benefit members of the class.  For that reason, "'[t]he fairness of the settlement must be evaluated primarily based on how it *compensates class members*'—not on whether it provides relief to other people." *In re Dry Max Pampers Litig.*, 724 F.3d 713, 720 (6th Cir. 2013) (quoting *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 654 (7th Cir. 2006)).[4]

But the relief offered by the Proposed Settlement is neither directed specifically to the vast majority of the absent class members nor otherwise designed to redress the injuries alleged in the complaint.  The Proposed Settlement purports to provide different relief to three distinct groups

---

[4] Proponents bear the burden to establish this element.  *See, e.g., Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1239 (11th Cir. 2011) (class action settlement proponents "'bear the burden of developing a record demonstrating that the settlement distribution is fair, reasonable and adequate.'"); *In re Katrina Canal Breaches Litig.*, 628 F.3d 185, 196 (5th Cir. 2010) ("the burden is on the settlement proponents to persuade the court that the agreement is fair, reasonable, and adequate *for the absent class members* who are to be bound by the settlement." (emphasis added)).

within the class.  *First*, for the majority of the class ("the Fibrosis Group"), the Proposed Settlement merely affirms steps the Defendants already took months ago—confirming that they will "not use the Fibrosis Restrictions to deny coverage for Hepatitis C Drugs under United's Clinical Pharmacy Program for Hepatitis C drugs," Dkt. 107 at 9-10, which has been the Defendants' position since January 1, 2016 (prior to the beginning of mediation), when "United removed the Fibrosis Restrictions from its Clinical Pharmacy Programs," *id.* at 7-8.

*Second*, for a small minority of the class ("the Abstinence Group"), the Proposed Settlement includes a requirement that the Defendants replace the existing "substance-abuse-abstinence" requirement that was being used for Hepatitis C Drugs with a different, "treatment-readiness" requirement in which a doctor's certification will now be needed in lieu of satisfying the existing abstinence requirement.  Dkt. 107 at 10.

*Third*, in addition to the two primary provisions that affect almost all of the members of the class and are focused on injunctive relief, the Proposed Settlement also will require the Defendants to set aside up to $500,000 in order to provide a payment of up to $2,400 per person to a very narrow subset of the class who reside in a state where the Defendants do not offer healthcare plans for the coming year ("the No-Insurance Group"), but only to the extent those class members can submit documentation demonstrating that they lack health insurance or have been denied coverage for Hepatitis C drugs by their insurance provider based on a restriction like the ones challenged by the class in this action.  Dkt. 107 at 10; Dkt. 107-2 at 4.[5]

---

[5] This payment may be of little value to the class because (1) those who claim it may still be required to pay significant out-of-pocket costs for the Hepatitis C treatment previously denied under a United insurance plan, and (2) there is no indication the money will go to more than a few class members—indeed, only about 200 could obtain the maximum $2,400.  The Attorneys General nonetheless acknowledge that any class member paid out of this fund would receive a direct and specific benefit from the Proposed Settlement, unlike the majority of the class.  However, as noted *infra* at 8-9, the Proposed Settlement's failings necessitate rejecting it as a whole, regardless of any benefit to this narrow subset of the class.

Essentially, with the exception of the possible payment of a subsidy to a very narrow subset of the class (the No-Insurance Group), *see supra* n.4, the Proposed Settlement rests entirely on injunctive relief that is universally applicable to everyone, regardless of their membership in the class. Injunctive relief may well be an appropriate resolution to certain class actions, as an injunction assures that the conduct at issue will not be continued. But, the injunctive relief in this particular case largely rests on actions the Defendants already took months ago and more generally fails to direct any particular benefit to the absent class members as compared with the public at large. Indeed, as class counsel readily admit, the injunctive relief offered by the Proposed Settlement applies equally to those in the class and "any person who seeks coverage in the future." *See* Dkt. 107 at 10 ("Thus, for persons who were previously denied coverage (and for any person who seeks coverage in the future), United will not be permitted to deny coverage for Hepatitis C Drug Treatment under the Clinical Pharmacy Programs based on that person's failure to demonstrate either (1) abstinence from drug or alcohol use, or (2) any particular level of fibrosis.").

Put simply, the absent class members are irrelevant to the implementation and success of the proposed injunctive relief that is the core of the Proposed Settlement. Again, it is telling that if all absent class members in the Abstinence and Fibrosis Groups opted out of the settlement, they would benefit from its terms just as equally as if they had remained, and there would be no change in the way in which the injunctive relief would be implemented. And yet, without receiving any compensation different from the public at large, all class members are agreeing to a sweeping release that gives up all of their "past, present, or future claims" against the Defendants "arising from or in any way related to the Action, Hepatitis C Drugs, hepatitis C virus ("HCV") *or any health or economic condition or circumstance caused by or in any way related to the Hepatitis C*

*Drugs or HCV.*" Dkt. 107 at 11 (emphasis added).[6]  Instead of serving the interests of the class by providing a direct and particularized benefit, the Proposed Settlement, through its sweeping release language, seems to make the majority of the class *worse off* by releasing potentially valuable claims in exchange for something the population as a whole will be (or is already) receiving.  *See In re Aqua Dots Prods. Liab. Litig.*, 654 F.3d 748, 752 (7th Cir. 2011) (imposing costs on the class to obtain relief "that already is on offer," which "duplicates a remedy that most buyers already have received, and that remains available to all members of the putative class," does "not adequately protect[] the class members' interests.").

      **B.**    **The Settlement Substantially Benefits Other Interested Parties**

Even as the majority of absent class members fail to obtain any specific and unique benefit from the Proposed Settlement (as compared to the public at large), the Defendant, class counsel, and the named plaintiffs all obtain concrete and specific benefits.  *First*, and foremost, the Defendant will be released from all claims (past, present, or future) held by the members of the class (named and unnamed) relating *in any way* to not just the claims in this action, but to any Hepatitis C drug or the hepatitis C virus more generally.  *See* Dkt. 107 at 11.  *Second*, named class representatives will each receive $5,000 under the Proposed Settlement. Dkt. 107 at 12; Dkt. 107-2 at 5.  And *third*, the agreement provides for almost $3 million in compensation to class counsel. Dkt. 107 at 12; Dkt. 107-2 at 5.  While this sweeping release of claims (including claims for damages relating to personal injury) and these monetary compensation and incentive numbers may well be appropriate in a different case (e.g., one where the absent class members likewise receive meaningful monetary compensation for the past harms they have alleged) there can be no dispute that the sweeping release language and the substantial monetary compensation received by the

---

[6] This is in stark contrast to injunctive relief obtained in enforcement actions by Attorneys General, which does not require consumers to waive or surrender claims.

named plaintiffs and class counsel are materially more significant than the benefits directed to absent class members, further demonstrating the inequitable nature of the Proposed Settlement.

*     *     *

The Proposed Settlement, which in sweeping terms bargains away the claims of the absent class for insufficient benefit, should be rejected.  In related circumstances, when faced with a settlement that specifies no particular relief to absent class members as a group (as opposed to society at large or future consumers), courts have refused to grant approval.  *See, e.g.*, *Crawford v. Equifax Payment Servs., Inc.*, 201 F.3d 877, 882 (7th Cir. 2000) (disapproving settlement; noting that prospective injunctive relief requiring changes to future versions of allegedly abusive debt collection letter offered nothing of value to members of the class, even if changes may have been of value to future debtors).  Indeed, courts have repeatedly explained that forward looking injunctive relief targeting future purchasers, including non-class-members, does not fulfill the purposes of Rule 23.  *See, e.g.*, *Pearson v. NBTY, Inc.*, 772 F.3d 778, 786 (7th Cir. 2014) ("future purchasers are not members of the class, defined as it is as consumers who have purchased [defendants product]."); *Synfuel*, 463 F.3d at 654 (approval of settlement was abuse of discretion; noting the insufficiency of operational changes that primarily benefited "future customers who are not plaintiffs").  And in a recent case in which many Attorneys General submitted an *amicus* brief presenting similar arguments to those included herein, the Southern District of California rejected a proposed settlement that offered only prospective injunctive relief (in the form of product labeling changes) that was equally available to the public at large and therefore provided no specific benefit to the class in exchange for the release of their claims.  *See Allen v. Similasan Corp.*, No. 12-cv-376-BAS-JLB, --- F.R.D. ---, 2016 WL 4249914, at *6 (S.D. Cal. Aug. 9, 2016).

Here, the Court should likewise look past whatever benefit might be provided to future, non-class members and reject the Proposed Settlement as not properly respecting the duties owed

9

by class counsel and the Court to the unnamed members of the class.  In order to warrant approval by the Court, the Proposed Settlement would need to, at a minimum, generate particularized value for the absent class members.  However, in the absence of a fundamental rebalancing of the benefits, which the Court cannot accomplish on its own as part of the review process, the Proposed Settlement must be rejected in its entirety.  *See, e.g.*, *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) ("The settlement must stand or fall in its entirety," as no court has "the ability to 'delete, modify or substitute certain provisions.'"); *Brooks v. Georgia State Bd. of Elections*, 59 F.3d 1114, 1119–20 (11th Cir. 1995) ("'We are not free to delete, modify or substitute certain provisions of the settlement. The settlement must stand or fall as a whole.'" (quoting *Cotton v. Hinton*, 559 F.2d 1326, 1331–32 (5th Cir. 1977)).[7]

While rejecting the Proposed Settlement may put the class at risk of the case failing on dispositive motions (in one scenario) or at trial (in another scenario), for the majority of the class that is not a serious concern.  Here, the Defendants have already implemented the key injunctive term relevant to the vast majority of the nationwide class separate and apart from the Proposed Settlement, opening up Harvoni as an available treatment to the public at large, including many members of the class.  Therefore, the risk to the class is especially diminished.

---

[7]  However, should the Court approve the settlement over the objections made herein, the Attorneys General ask that fees only be awarded as a reasonable percentage (~25%) of the claims actually made by and paid out to members of the No-Insurance Group from the $500,000 fund, as these monies would be the only direct and specific benefit provided to the class as opposed to the public at large.  *See, e.g., Allen v. Bedolla*, 787 F.3d 1218, 1224 n.4, 1224-1225 (9th Cir. 2015) (noting need to examine fee award "in terms of economic reality," and doing so by measuring fee award against amount actually "disbursed to the class in monetary relief" out of a larger claims-made fund); *Redman v. RadioShack Corp.*, 768 F.3d 622, 630 (7th Cir. 2014) ("The ratio that is relevant to assessing the reasonableness of the attorneys' fee that the parties agreed to is the ratio of (1) the fee to (2) the fee plus *what the class members received*." (emphasis added)).

**CONCLUSION**

For the reasons stated herein, the Attorneys General ask the Court to reject the Proposed

Settlement that is before the Court for review and deny the related motions.

DATED:  December 8, 2016                                    RESPECTFULLY SUBMITTED,

                                                            MARK BRNOVICH
                                                            ATTORNEY GENERAL
                                                            STATE OF ARIZONA

                                                            By: _____
                                                            Cary A. Lubetsky, Esquire
                                                            Florida Bar No. 961360
                                                            KRINZMAN HUSS LUBETSKY
                                                            800 Brickell Avenue, Suite 1501
                                                            Miami, Florida 33131
                                                            T:  (305) 854-9700
                                                            F:  (305) 854-0508
                                                            Primary email: cal@khllaw.com
                                                            *Local Counsel for Amici Curiae Arizona*
                                                            *Attorney General's Office*

11

Paul N. Watkins
Brunn ("Beau") W. Roysden III
Dana R. Vogel
*ASSISTANT ATTORNEYS GENERAL*
Office of the Attorney General
1275 West Washington Street
Phoenix, AZ  85007-2926
T: (602) 542-7757
F: (602) 542-4377

*Counsel for Amicus Curiae Arizona Attorney General's Office*

**ALSO SUPPORTED BY:**

**LUTHER STRANGE**
**ALABAMA ATTORNEY GENERAL**
501 Washington Ave.
Montgomery, AL  36130-0152

**LESLIE RUTLEDGE**
**ATTORNEY GENERAL OF ARKANSAS**
323 Center Street, Suite 200
Little Rock, AR 72201

**LAWRENCE G. WASDEN**
**IDAHO ATTORNEY GENERAL**
P.O. Box 83720
Boise, ID 83720-0010

**DEREK SCHMIDT**
**KANSAS ATTORNEY GENERAL**
120 SW 10th Avenue
Topeka, KS 66612

**JEFF LANDRY**
**LOUISIANA ATTORNEY GENERAL**
P.O. Box 94005
Baton Rouge, LA 70804

**JIM HOOD**
**MISSISSIPPI ATTORNEY GENERAL**
P.O. Box 220
Jackson, MS 39205

12

**ADAM PAUL LAXALT**
**ATTORNEY GENERAL OF NEVADA**
100 North Carson Street
Carson City, NV 89701

**WAYNE STENEHJEM**
**ATTORNEY GENERAL OF NORTH DAKOTA**
600 E. Boulevard Avenue
Bismarck, ND 58505

**E. SCOTT PRUITT**
**ATTORNEY GENERAL OF OKLAHOMA**
313 N.E. 21st Street
Oklahoma City, OK 73105-4894

**BRUCE R. BEEMER**
**ATTORNEY GENERAL OF PENNSYLVANIA**
16th Floor, Strawberry Square
Harrisburg, PA 17120

**ALAN WILSON**
**ATTORNEY GENERAL FOR SOUTH CAROLINA**
P.O. Box 11549
Columbia, SC 29211

**KEN PAXTON**
**ATTORNEY GENERAL OF TEXAS**
P.O. Box 12548 (MC 059)
Austin, TX 78711-2548

**PETER K. MICHAEL**
**ATTORNEY GENERAL OF WYOMING**
2320 Capitol Avenue
Cheyenne, WY 82002

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this __8th__ day of December, 2016, I electronically filed the

foregoing with the Clerk of the Court by using the CM/ECF system, which will send a Notice of

Electronic Filing to counsel of record on the attached Service List.

By:_____

Cary A. Lubetsky, Esquire
Florida Bar No. 961360

13

## SERVICE LIST

**Alan H. Rolnick, Esq.**
**Charles E. Whorton, Esq.**
**Daniel A. Sox, Esq.**
**Andrew Rivero, Esq.**
Rivero Mestre LLP
2525 Ponce de Leon Blvd., Suite 1000
Coral Gables, FL 33134
arolnick@riveromestre.com
cwhorton@riveromestre.com
dsox@riveromestre.com
arivero@riveromestre.com
*Counsel for Plaintiffs*

**Brian D. Boone, Esq.**
**Brian R. Stimson, Esq.**
**William H. Jordon, Esq.**
**Kristine McAlister Brown, Esq.**
Alston & Bird, LLP
Bank of America Plaza
101 South Tryon Street, Suite 4000
Charlotte, NC 28280
brian.boone@alston.com
brian.stimson@alston.com
billjordan@alston.com
kristy.brown@alston.com
*Counsel for Defendant, UnitedHealth Group, Inc., United HealthCare Services, Inc., United Healthcare, Inc., Neighborhood Partnership, Inc.,*

**Michael R. Tein, Esq.**
Lewis Tein
3059 Grand Avenue
Suite 340
Coconut Grove, FL 33133
tein@lewistein.com
*Counsel for Defendants, United HealthCare Services, Inc., and United Healthcare, Inc., and United Healthcare Life Insurance, Co.*